STATE OF CONNECTICUT *v.* GREGORY GAYMON
(AC 25708)

Flynn, Bishop and Harper, Js.

Argued October 26, 2005—officially released February 7, 2006

*Charles F. Willson*, special public defender, for the appellant (defendant).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Robert M. Brennan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Gregory Gaymon, appeals from the judgment of the trial court revoking his probation. The defendant claims that (1) the court improperly interpreted a special condition of his probation, (2) he did not have fair notice of the conduct proscribed by a special condition of his probation, and (3) the evidence did not support the court's finding that

he violated a special condition of his probation. We affirm the judgment of the trial court.

In May, 1998, following a guilty plea, the defendant was convicted of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) for stabbing the victim, who he subsequently married. The court sentenced the defendant to a fifteen year term of imprisonment, suspended after five years served, and five years of probation. One of the special conditions of the defendant's probation was "no violence toward victim."

On March 11, 2004, the defendant was arrested and charged with violating that special condition. After conducting an evidentiary hearing, the court deemed credible a statement that Linda Gaymon, the victim and the defendant's wife, made to the defendant's probation officer on March 8, 2004. The statement read: "I have asked [the defendant] several times to leave my apartment. I don't need or want him there. He said he's not going to leave [and] that I will have to call the police to get him out. He said if I don't stop telling him to leave I am going to make him do something to me. I feel that this is a threat that he will hit or harm me in some way. I am afraid for my safety."

In concluding that the defendant violated the special condition of "no violence toward victim," the court relied on the definition of "family violence" set forth in General Statutes § 46b-38a (1). The court found that the defendant's threat, when viewed in light of the defendant's prior conviction for stabbing Linda Gaymon, constituted an act of threatened violence that created an imminent fear of harm, injury or assault. The court noted that the defendant "ha[d] not stopped his victimization of Mrs. Gaymon" and that she had reason to expect violence from the defendant and to fear for her safety. The court thereafter found that the beneficial purposes of the defendant's probation were

no longer being served and revoked the defendant's probation, sentencing the defendant to a ten year term of imprisonment, suspended after five years served, and three years of probation. This appeal followed.

I

The defendant first claims that the court improperly interpreted the special condition of his probation that stated "no violence toward victim" by interpreting "violence" in accordance with the definition of "family violence" set forth in § 46b-38a (1). The defendant claims that violence requires the use of physical force to cause injury, and that its definition is, therefore, much more narrow than the definition of "family violence" codified in § 46b-38a (1). We disagree.

The interpretation of a condition of probation "presents a question of law, over which our review is de novo." *State* v. *Faraday*, 268 Conn. 174, 191, 842 A.2d 567 (2004).

The defendant argues that we should afford the word "violence" its usual and ordinary meaning. We agree.[1] As the defendant suggests, violence does encompass the exertion of "rough or injurious physical force, action or treatment." Random House Webster's Unabridged Dictionary (2d Ed. 2001). Violence, however, likewise is defined as "a violent act or proceeding" or "rough or immoderate vehemence, as of feeling or language . . . ." Id. Violence is also defined as "[a]n act or instance of violent action or behavior" and "[v]ehemence of feeling or expression." American Heritage Dictionary of the English Language (1981). Violent is defined as the display of "undue mental or emotional force." Id.

---

[1] Courts typically find the common understanding of words and phrases to be expressed in a dictionary. See *State* v. *Love*, 246 Conn. 402, 408, 717 A.2d 670 (1998); *State* v. *McCoy*, 91 Conn. App. 1, 4, 879 A.2d 534, cert. denied, 276 Conn. 904, 884 A.2d 1026 (2005).

We are persuaded that the ordinary meaning of violence is not limited to the use of injurious physical force, as the defendant suggests, but encompasses the use of vehement or forceful language or expression, especially the utterance of threats to cause physical injury when there is a likelihood that physical violence will occur. General Statutes § 46b-38a (1) provides: " 'Family violence' means an incident resulting in physical harm, bodily injury or assault, or an act of threatened violence that constitutes fear of imminent physical abuse, bodily injury or assault between family members or household members. Verbal abuse or argument shall not constitute family violence unless there is present danger and the likelihood that physical violence will occur." The court's reliance on that statutory provision was appropriate because it describes certain types of violence, including the use of vehement or forceful language, such as that which threatens physical injury.

The definition of "family violence" in § 46b-38a (1) is not materially inconsistent with the customary meaning of violence in that "family violence" is a type of violence. Further, we deem the court's reliance on § 46b-38a (1) to be reasonable under the facts of this case. The special condition of probation at issue was imposed following the defendant's conviction for stabbing the victim, who was his wife at the time of the present proceeding. It was not unreasonable for the court to seek guidance from a legislative enactment concerning violence between family members in determining whether the defendant committed an act of violence against his wife.

## II

The defendant next claims that he did not have fair notice that his behavior would constitute violence toward the victim. We disagree.

The defendant does not dispute that he had actual notice of the special conditions of his probation. He argues that he lacked notice that the court would rely on the definition of "family violence" in § 46b-38a (1) in interpreting the special condition of "no violence toward victim." The issue of whether a condition of probation affords a probationer fair notice of proscribed conduct is an issue of law that we review de novo. *State* v. *Faraday*, supra, 268 Conn. 191.

"Due process requires, at a minimum, that an individual receive notice of probation conditions and an opportunity to be heard. . . . The purpose of notice of conditions is to ensure that the probationer understands the precise terms of his obligations and that he risks termination of his probation if he fails to meet those obligations.

"Written conditions of probation formally imposed by a court order usually provide notice sufficient to satisfy due process. Therefore, where there is an alleged violation of an explicit condition, it would be difficult for a defendant to claim successfully that he was denied due process on the ground of no fair notice. Obviously, a finding of actual notice impliedly includes a finding of fair notice." (Internal quotation marks omitted.) *State* v. *Boseman*, 87 Conn. App. 9, 17, 863 A.2d 704 (2004), cert. denied, 272 Conn. 923, 867 A.2d 838 (2005).

As we concluded in part I, the court's reliance on § 46b-38a (1) was not improper because family violence is a type of violence. The defendant had actual notice that he was not to engage in violence toward the victim. The word violence defines a category of conduct that can be, for example, verbal or physical in nature. "[F]air warning [of a probation order] is not to be confused with the fullest, or most pertinacious, warning imaginable. Conditions of probation do not have to be cast in letters six feet high, or to describe every possible permutation,

or to spell out every last, self-evident [detail. . . . Conditions] of probation may afford fair warning even if they are not precise to the point of pedantry. In short, conditions of probation can be written—and must be read—in a commonsense way." (Internal quotation marks omitted.) *United States* v. *Balon*, 384 F.3d 38, 43 (2d Cir. 2004), quoting *United States* v. *Gallo*, 20 F.3d 7, 12 (1st Cir. 1994). The court's use of the word violence was sufficient to put the defendant on notice that the type of threatening behavior that he engaged in toward the victim was prohibited. The defendant's claim, therefore, fails.

## III

Finally, the defendant argues that even if the court properly relied on the definition of family violence, the evidence did not support a finding that family violence occurred because there was no evidence that the victim was in fear of *imminent* physical harm, bodily injury or assault. We disagree.

"[T]o support a finding of probation violation, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. . . . In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . This court may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.)

*State* v. *McElveen*, 69 Conn. App. 202, 205, 797 A.2d 534 (2002).

The court had before it Linda Gaymon's statement, in which she represented that the defendant had threatened to "hit or harm [her] in some way." She represented: "I am afraid for my safety." The court deemed the statement to be credible after finding that the statement was notarized, was in Linda Gaymon's handwriting and was not made in the defendant's presence, and that Linda Gaymon had appeared in person at the office of adult probation to give the statement to the defendant's probation officer. Those findings are supported by the evidence. The court also heard testimony from the defendant's probation officer that when Linda Gaymon arrived unannounced at his office on March 8, 2003, she told him that "she wanted to give a statement indicating that the defendant had been violent and harassing toward her." The defendant's probation officer testified that she had made the written statement after he informed her of the consequences of her statement and that she had indicated that she understood those consequences. On the basis of that evidence, as well as the defendant's prior criminal conduct toward her, it was reasonable for the court to find that the defendant's conduct caused a fear of imminent physical harm, bodily injury or assault and that her statement and conduct reflected that fear of imminent harm.

The judgment is affirmed.

In this opinion the other judges concurred.