# STATE OF CONNECTICUT *v.* GREGORY GAYMON
## (AC 25981)

Bishop, McLachlan and Pellegrino, Js.

Argued March 31—officially released June 27, 2006

*Charles F. Willson*, special public defender, for the appellant (defendant).

*Robert M. Brennan*, senior assistant state's attorney, with whom, on the brief, was *Jonathan C. Benedict*, state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Gregory Gaymon, appeals from the judgment of conviction, rendered after a jury trial, of breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (3). On appeal, the defendant claims that (1) the trial court improperly instructed the jury and (2) there was insufficient evidence to support his conviction. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 2003, the defendant was released from a term of incarceration and began serving a five year probationary period. On March 11, 2004, the defendant's probation officer, Gregory Fasold, went to the defendant's residence with two other probation officers and two Bridgeport police officers in order to arrest the defendant for violating his probation. When the five officers arrived, they observed the defendant on the front porch. They handcuffed the defendant and informed him that they were arresting him for violating his probation. The defendant then began to swear at Fasold and told him, "I'm going to kick your fucking ass." Because the defendant had become angry, Fasold backed away from him. One of the other probation officers then placed leg irons on the defendant. As the officers led him from the porch, he continued swearing at Fasold and then spit in his face. Although the officers had intended to transport the defendant in the probation officers' vehicle, they decided to place him instead in the police cruiser

because it contained a protective barrier between the front and back seats.

Subsequently, the defendant's probation was revoked and he received a sentence of ten years incarceration, execution suspended after five years, followed by three years of probation.[1] The state then filed a substitute information charging the defendant in connection with his behavior during his arrest for violation of probation. After a trial, the jury returned a verdict of not guilty on one count of assault of public safety personnel and a verdict of guilty on one count of breach of the peace in the second degree. The court rendered judgment in accordance with the verdict and sentenced the defendant to six months incarceration, consecutive to his sentence for violation of probation. This appeal followed.

I

The defendant first claims that the court improperly failed to instruct the jury that when the target of inflammatory language is a probation officer, the offensiveness of that language must be extreme in order to support a conviction of breach of the peace in the second degree. The defendant did not request such an instruction at trial and did not object to the court's charge, but he now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2]

---

[1] This court recently affirmed the judgment revoking the defendant's probation. See *State* v. *Gaymon*, 93 Conn. App. 569, 889 A.2d 880, cert. denied, 277 Conn. 927, 895 A.2d 799 (2006).

[2] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

We determine that the record is adequate for review and that the claim is of constitutional magnitude,[3] but we conclude that the omission of the instruction did not deprive the defendant of a fair trial.

"When a challenge to a jury instruction is of constitutional magnitude, the standard of review is whether it is reasonably possible that the jury [was] misled. . . . [T]he charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citation omitted; internal quotation marks omitted.) *State* v. *Straub*, 90 Conn. App. 147, 152–53, 877 A.2d 866, cert. denied, 275 Conn. 927, 883 A.2d 1252 (2005).

We begin by examining the elements of the crime of breach of the peace in the second degree. Section 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . (3) threatens to commit any crime against another person or such other person's property . . . ." That statute prohibits "[t]rue threats," in which "the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. . . . The speaker need

___

[3] "A claim that the trial court failed to instruct the jury adequately on an essential element of the crime charged necessarily involves the defendant's due process rights and implicates the fairness of his trial." (Internal quotation marks omitted.) *State* v. *Flowers*, 69 Conn. App. 57, 69, 797 A.2d 1122, cert. denied, 260 Conn. 929, 798 A.2d 972 (2002).

not actually intend to carry out the threat. Rather, a prohibition on true threats protect[s] individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur." (Internal quotation marks omitted.) *State* v. *DeLoreto*, 265 Conn. 145, 154, 827 A.2d 671 (2003).

Whether a statement constitutes a true threat "is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." (Internal quotation marks omitted.) Id., 156. "[A]lleged threats should be considered in light of their entire factual context, including the surrounding events and reaction of the listeners." (Internal quotation marks omitted.) Id. Furthermore, "the threat need not be imminent to constitute a constitutionally punishable true threat." Id., 159.

In addition to true threats, "[t]hreatening statements that do not rise to the level of a true threat may nonetheless constitute fighting words that could be criminalized under [§ 53a-181 (a) (3)] . . . ." Id., 168. Fighting words consist of "speech that has a direct tendency to cause imminent acts of violence or an immediate breach of the peace. Such speech must be of such a nature that it is likely to provoke the average person to retaliation." (Internal quotation marks omitted.) *State* v. *Szymkiewicz*, 237 Conn. 613, 620, 678 A.2d 473 (1996).

Whether a statement constitutes a true threat or fighting words prohibited by § 53a-181 (a) (3) is a question of law subject to de novo review. See *Reid* v. *Commissioner of Correction*, 93 Conn. App. 95, 108, 887 A.2d 937 (2006); see also *State* v. *DeLoreto*, supra, 265 Conn. 152–53. "[I]n cases raising First Amendment issues [the United States Supreme Court has] repeatedly held that

an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." (Internal quotation marks omitted.) *DiMartino* v. *Richens*, 263 Conn. 639, 662, 822 A.2d 205 (2003).

On the basis of our independent examination of the whole record, we conclude that the defendant's statements to Fasold constituted true threats. The defendant swore at Fasold and told him, "I'm going to kick your fucking ass." Although the defendant already had been handcuffed, his statements nonetheless caused Fasold to back away from him and led one of the other probation officers to place leg irons on him. The defendant then continued swearing at Fasold and spit in his face. In view of the defendant's behavior, the probation officers changed their plan to transport him in their vehicle and instead placed him in the police cruiser. Considering the entire factual context, a reasonable person would foresee that Fasold interpreted the defendant's statements as a serious expression of intent to harm. The defendant points out that he did not raise his fist or make any other gestures toward Fasold besides spitting at him, but the lack of such additional movements does not detract from the serious expression of intent to harm contained in his statements.

We acknowledge that our Supreme Court has adopted a distinction between police officers and civilians when the inflammatory statements at issue constitute fighting words. Section 53a-181 (a) (3) "potentially could encompass that class of statements that, while they would qualify as fighting words for the ordinary citizen, are not offensive enough to provoke a police officer to violence . . . . [W]hen a police officer is the only person upon whose sensibilities the inflammatory language could have played, a conviction can be supported only for [e]xtremely offensive behavior supporting an inference that the actor wished to provoke the [officer] to

violence." (Citation omitted; internal quotation marks omitted.) *State* v. *DeLoreto*, supra, 265 Conn. 168–69. When the statements at issue constitute true threats, however, "[a] police officer has no greater duty than a civilian has to submit to the threat of a criminal assault." Id., 162. "[T]he first amendment does not demand that we narrow the class of statements that constitute true threats when spoken to a police officer." Id., 163.

In the present case, we need not reach the defendant's argument that probation officers are equivalent to police officers in the context of arresting a person for violation of probation.[4] Even if we were to accept the defendant's argument, it would not assist him in his claim that the court improperly instructed the jury. An instruction regarding the distinction between police officers and civilians applies only when the statements at issue constitute fighting words. Because we have determined that the defendant's statements to Fasold constituted true threats, the court's failure to instruct the jury as to fighting words did not affect the fairness of the trial.

II

The defendant next claims that there was insufficient evidence to support his conviction. We disagree.

---

[4] Although some statutes suggest that probation officers could be analogized to police officers in certain situations; see, e.g., General Statutes § 53a-32 (a) (empowering probation officers to arrest probationers without a warrant); this court also has explained that "[p]robation officers act under the auspices of the judicial branch in requiring the defendant to submit to conditions of probation. . . . [T]he probation process operates as an arm of the judiciary, not of the police or prosecution. . . . Thus, when a probation officer demands a probationer's compliance with a condition of probation, he or she is acting as a representative of the judicial branch and not as a police officer." (Citations omitted; internal quotation marks omitted.) *State* v. *Fuessenich*, 50 Conn. App. 187, 198–99, 717 A.2d 801 (1998), cert. denied, 247 Conn. 956, 723 A.2d 813, cert. denied, 527 U.S. 1004, 119 S. Ct. 2339, 144 L. Ed. 2d 236 (1999).

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Mulero*, 91 Conn. App. 509, 513, 881 A.2d 1039 (2005), cert. denied, 277 Conn. 912, 895 A.2d 792 (2006).

Although we determined in part I that the defendant's statements constituted true threats as a matter of law only for the purpose of reviewing the court's charge to the jury, our examination of the evidence in part I also informs our review of the defendant's claim of insufficient evidence. Viewing the evidence in the light most favorable to the prosecution, we conclude that the jury reasonably could have found beyond a reasonable doubt that the defendant had committed a breach of the peace in the second degree.

The judgment is affirmed.

In this opinion the other judges concurred.