## STATE OF CONNECTICUT v. JACEK TARASIUK
### (AC 31359)

DiPentima, C. J., and Alvord and Mihalakos, Js.

Argued October 21—officially released December 14, 2010

*Cameron Dorman*, special public defender, for the appellant (defendant).

*Nancy L. Walker*, special deputy assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Elizabeth M. Moseley*, assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Jacek Tarasiuk, appeals from the judgment of conviction, rendered after a jury trial, of breach of the peace in the second degree in violation of General Statutes § 53a-181 (a), possession of marijuana in violation of General Statutes § 21a-279

(c) and possession of drug paraphernalia in violation of General Statutes § 21a-267 (a).[1] On appeal, the defendant claims that (1) his conviction of breach of the peace should be reversed because the court improperly instructed the jury as to the definition of "true threat" and (2) the prosecutor engaged in prosecutorial impropriety that deprived him of a fair trial. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts, as relevant to the issues raised in the defendant's appeal. The defendant and the victim, Margorzata Backiel, finalized their divorce in May, 2006, but litigation with respect to child support and visitation continued postjudgment. On June 5, 2008, the defendant and Backiel were at the New Britain courthouse for one such proceeding. After the hearing, the defendant noticeably was agitated and addressed Backiel in Polish. Backiel testified that he stated, twice, "I will kill you."

When Backiel and her attorney reported the threat to the courtroom marshal, the marshal detained the defendant in the courthouse's holding area. The lead marshal was informed of the incident and called the state police, who arrested the defendant and took him into custody. The state trooper inventoried the defendant's backpack, which held, among other things, a plastic bag containing a leafy substance and a box of cigarettes housing a plastic tube with a burnt residue at the end. Subsequent testing showed that the plant material and residue on the plastic tube were marijuana. The defendant denied ownership of the items.

---

[1] The defendant's appeal form indicates that he is appealing from the conviction of each of the three criminal charges as well as the trial court's finding that, in light of these charges, he had violated his previously ordered probation. The defendant's arguments, however, addressed only the conviction of breach of the peace. Because we affirm the trial court as to those issues argued, it is not necessary for us to assess how a reversal may have affected the conviction of the other charges, or the court's finding that the defendant violated his probation.

The defendant was charged by way of long form information with breach of the peace in the second degree, possession of marijuana and possession of drug paraphernalia. After a jury trial, he was convicted on all counts, his previous probation was revoked and he was sentenced to a total effective term of three years, nine months imprisonment. This appeal followed.

I

The defendant first claimed that the court improperly failed to instruct the jury that a "true threat" must not be "mere bluster, exaggeration or something carelessly said in the heat of the moment."[2] The defendant did not request such an instruction at trial and did not object to the court's charge, but he now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3] We determine that the record is adequate for review and that the claim is of constitutional magnitude,[4] but we conclude that the court's instructions were proper and, therefore, did not deprive the defendant of a fair trial.[5]

---

[2] During oral argument before this court, these are the specific words that the defendant identified as missing from the charge.

[3] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[4] "A claim that the trial court failed to instruct the jury adequately on an essential element of the crime charged necessarily involves the defendant's due process rights and implicates the fairness of his trial." (Internal quotation marks omitted.) *State* v. *Flowers*, 69 Conn. App. 57, 69, 797 A.2d 1122, cert. denied, 260 Conn. 929, 798 A.2d 972 (2002).

[5] The state argues that this claim was waived because the defendant approved of the instructions at trial. Because we find that the charge as stated was proper, we decline to address the issue of waiver.

"When a challenge to a jury instruction is of constitutional magnitude, the standard of review is whether it is reasonably possible that the jury [was] misled. . . . [T]he charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Pires*, 122 Conn. App. 729, 744, 2 A.3d 914 (2010).

In *State* v. *DeLoreto*, 265 Conn. 145, 158–59, 827 A.2d 671 (2003), our Supreme Court established the definition and application of the term "true threat" in the context of § 53a-181 (a). Initially, the court in *DeLoreto* cited the United States Supreme Court's definition of true threat: "True threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. . . . The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protect[s] individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur." (Internal quotation marks omitted.) Id., quoting *Virginia* v. *Black*, 538 U.S. 343, 359–60, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003).

Our Supreme Court went on to "distinguish between true threats, which, because of their lack of communicative value, are not protected by the first amendment, and those statements that seek to communicate a belief or idea, such as political hyperbole or a mere joke,

which are protected. . . . In the context of a threat of physical violence, [w]hether a particular statement may properly be considered to be a threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault. . . . A true threat, where a reasonable person would foresee that the listener will believe he will be subjected to physical violence upon his person, is unprotected by the first amendment." (Citation omitted; internal quotation marks omitted.) *State* v. *DeLoreto*, supra, 265 Conn. 155–56.

"Imminence, however, is not a requirement under the true threats doctrine. . . . True threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. . . . The speaker need not actually intend to carry out the threat. . . . Nor does our breach of the peace statute require that the threat be imminent. Section 53a-181 (a) (3) requires that the state prove, beyond a reasonable doubt, that the defendant: (1) threatened to commit a crime against another person or that person's property; (2) with the intent to cause a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm." (Citations omitted; internal quotation marks omitted.) Id., 158–59.

In the present case, that portion of the jury instructions challenged by the defendant is an almost *verbatim* reproduction of the definition of true threat outlined in *DeLoreto*.[6] *DeLoreto* has been cited repeatedly as the primary source for our state's definition of true threat.

[6] The jury charge in the present case provided, in relevant part: "[True threats] must be more than a mere display of bad manners. [The conduct] must cause or create a risk of causing alarm among members of the public.

See *State* v. *Moulton*, 120 Conn. App. 330, 343–44, 991 A.2d 728, cert. granted on other grounds, 297 Conn. 916, 996 A.2d 278 (2010); *State* v. *Cook*, 287 Conn. 237, 245–57, 947 A.2d 307, cert. denied, 555 U.S. 970, 129 S. Ct. 464, 172 L. Ed. 2d 328 (2008); *State* v. *Skidd*, 104 Conn. App. 46, 54–55, 932 A.2d 416 (2007); *State* v. *Gaymon*, 96 Conn. App. 244, 247–50, 899 A.2d 715, cert. denied, 280 Conn. 906, 907 A.2d 92 (2006). The court's instructions also stated that the conduct must be more than "mere display of bad manners" and repeatedly stated that it must be a "serious expression" of intent to harm. These phrases adequately address the necessity of the threat being more than "mere puffery." Furthermore, in challenging the instructions in the present case, the defendant's brief claimed that the instruction should have contained language "similar to the following: A true threat is distinguished from a threat that is mere puffery, bluster, bravado, careless talk, exaggeration or something said in a careless manner." (Internal quotation marks omitted.) We disagree with the suggestion that these certain talismanic terms must be included in the jury charge. Accordingly, the defendant's first claim fails, as there is no reasonable possibility that the jury was misled.

## II

The defendant's second claim is that prosecutorial impropriety deprived him of his constitutional right to

[True threats] encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual. A serious expression of an intent to commit an act of unlawful violence toward a particular individual. The speaker need not actually intend to carry out that threat; rather, the prohibition on true threats protects individuals . . . from the fear of violence and from the disruption that such fear engenders, in addition to protecting people from the possibility that the threatened violence will occur. Whether a particular statement may be properly considered to be a true threat is governed by an objective standard. Whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates a statement as a serious expression of intent to harm or assault. Moreover, alleged threats or threats should be considered in light

due process. He argues that it was improper for the prosecutor to assert during closing argument that the jury should "send [its] own message to this defendant and return a guilty verdict . . . ." The state contends that this does not amount to impropriety, despite the fact that the trial court, sua sponte, issued a curative instruction. We agree that the prosecutor's statement was not improper.

"[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. Put differently, [impropriety] is [impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question . . . ." (Internal quotation marks omitted.) *State* v. *Coney*, 266 Conn. 787, 808, 835 A.2d 977 (2003).

"[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical

of their entire factual context, including the surrounding events and the reaction of the listener."

language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . . Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case. . . .

"Or to put it another way while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. . . . A prosecutor must draw a careful line. On the one hand, he should be fair; he should not seek to arouse passion or engender prejudice. On the other hand, earnestness or even a stirring eloquence cannot convict him of hitting foul blows." (Internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 744–46, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006).

In the present case, the prosecutor asked the jury to "send [a] message to this defendant . . . ." We agree with the state that *State* v. *Reynolds*, 264 Conn. 1, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004), is controlling. Our Supreme Court held that although the prosecutor may not argue that the jury should send a message to the *community*, the prosecutor may argue that the jury should send a message to the *defendant*. Id., 185–86; see also *State* v. *Griffin*, 97 Conn. App. 169, 177–78, 903 A.2d 253 (permissible to argue that the jury should " 'make [the defendant] listen' "), cert. denied, 280 Conn. 925, 908 A.2d 1088 (2006). Accordingly, we conclude that the use of such comments in this case was not improper. Thus, we need not proceed to the second inquiry, which is whether there was a due process violation.

The judgment is affirmed.

In this opinion the other judges concurred.