******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* MICHAEL ANTHONY DENNIS
## (AC 47677)

Suarez, Westbrook and Sheldon, Js.

*Syllabus*

The defendant appealed from the trial court's judgment revoking his probation and imposing a sentence of incarceration. He claimed, inter alia, that the court's finding that he violated his probation by failing to submit to counseling as required pursuant to the conditions of his probation was clearly erroneous. *Held*:

The trial court's finding that the defendant had violated his probation was not clearly erroneous, as that finding was supported by evidence in the record and this court was not left with a definite and firm conviction that a mistake was made.

The defendant's claim that he lacked adequate notice that he was required, as conditions of his probation, to gain admission into a specific treatment program and to admit that he was abusing alcohol was unavailing, as the defendant had sufficient notice of the terms of his probation to satisfy the requirements of due process.

The trial court did not abuse its discretion by revoking the defendant's probation and imposing a sentence of incarceration, as the court had ample evidence before it to support its finding that the beneficial purposes of probation were no longer being served.

Argued September 11, 2025—officially released February 10, 2026

*Procedural History*

Information charging the defendant with violation of probation, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *McShane, J.*; judgment revoking the defendant's probation, from which the defendant appealed to this court. *Affirmed*.

*Ruth Burke*, deputy assistant public defender, for the appellant (defendant).

*Rebecca Z. Oestreicher*, special deputy assistant state's attorney, with whom, on the brief, were *Joseph*

*T. Corradino*, state's attorney, and *Justina Moore*, assistant state's attorney, for the appellee (state).

*Opinion*

WESTBROOK, J. The defendant, Michael Anthony Dennis, appeals from the judgment of the trial court finding him in violation of, and revoking, his probation pursuant to General Statutes § 53a-32,[1] and committing him to the custody of the Commissioner of Correction to serve thirty months of incarceration. The defendant claims that (1) the court's finding that he violated his probation by failing to submit to counseling as required pursuant to his conditions of probation is clearly erroneous, (2) he lacked adequate notice that he was required to gain admission into a specific treatment program and to admit that he was abusing alcohol, and (3) the court abused its discretion by revoking his probation and sentencing him to incarceration because the beneficial aspects of probation were still being served. We disagree and, accordingly, affirm the judgment of the court.

The following procedural history and facts, which were found by the court on the basis of the evidence presented at the violation of probation hearing or are otherwise undisputed in the record, are relevant to our resolution of this appeal. In January, 2015, the defendant was convicted of assault in the first degree in violation of General

---

[1] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation . . . the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation . . . .

* * *

"(d) If such violation is established . . . the court may . . . (4) revoke the sentence of probation . . . . If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term of imprisonment, all or a portion of which may be suspended entirely or after a period set by the court, followed by a period of probation with such conditions as the court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence. . . ."

Statutes § 53a-59 (a) (1) and carrying a pistol without a permit in violation of General Statutes (Rev. to 2015) § 29-35 (a). The court imposed a total effective sentence of fifteen years of incarceration, execution suspended after seven years, followed by five years of probation. On September 6, 2018, the defendant was released from custody and began to serve the probationary portion of his sentence. Prior to his release, the defendant reviewed and signed the conditions of his probation, pursuant to which he was ordered, inter alia, to "[s]ubmit to any medical and/or psychological examination, urinalysis, alcohol and/or drug testing, and/or counseling sessions required by the court or the probation officer" and "not [to] violate any criminal law of the United States, this state or any other territory." The conditions of probation also contained court-ordered special conditions, including that the defendant undergo "substance abuse evaluation and treatment including random urines." Between October 31, 2019, and October 20, 2022, the defendant's probation was supervised by the Judicial Administrative Monitoring Service (JAMS).[2]

Because of multiple positive urinalysis results for alcohol, the defendant eventually was released from supervision by JAMS and assigned a probation officer, Devyn Coutant, who took over his probation supervision. Coutant referred the defendant to Southwest Community Healthcare (Southwest) for substance abuse and mental health evaluation and treatment. The defendant attended treatment sessions at Southwest, but his attendance "was very sporadic."[3] The defendant understood that he was required to attend Southwest treatment sessions sober and that Southwest would send him home if a Breathalyzer test showed that he had a positive blood

[2] As stated by the trial court, JAMS is a division of the Office of Adult Probation and supervises probationers who require "less stringent supervision."

[3] Coutant testified as follows regarding the defendant's failure to complete treatment with Southwest: "It's either he goes, they send him home because he's intoxicated while in treatment, or he just doesn't go, but they keep the referral open for a certain amount of time before discharging him."

alcohol content (BAC). On those occasions when the defendant did attend treatment sessions at Southwest, he frequently was sent home due to testing positive for alcohol. Southwest eventually discharged the defendant from the program due to lack of attendance. Although the defendant attempted to return to Southwest for treatment, Southwest declined to admit him because it concluded that he needed a higher level of care than it could provide. The defendant then sought admission to First Step Detox (First Step) but was denied admission because he refused to admit to drinking alcohol, which was a condition precedent to admission to First Step.[4] During this period, the defendant provided six urine samples at the Office of Adult Probation, all of which tested positive for alcohol.[5]

On June 30, 2023, the defendant was arrested for and charged with criminal possession of ammunition in violation of General Statutes §53a-217.[6] Following

---

[4]Coutant gave the following testimony at the violation of probation hearing: "So, we attempted Southwest, Southwest recommended a higher level of care. So, we called First Step . . . and he was unable to go in because the way First Step works is, if you say I'm not drinking alcohol, I'm not doing drugs, then they're not going to accept you in. No matter if I say he tested positive for this, this and this, they won't accept him in because they have to go off his word, not mine."

[5]One of these urine samples showed the defendant had a BAC of 0.395.

[6]The trial court, in denying a motion to suppress evidence obtained during the stop and warrantless search of the defendant's vehicle, articulated the following facts underlying the defendant's arrest: "[A]t approximately 12:16 a.m., Bridgeport Police were dispatched to 32 Revere Street because of a Shot Spotter activation. ['Shot Spotter is a system of microphones around a city that uses sound to triangulate the location of gunshots and relays the information back to patrol officers.' *State* v. *Jones*, 210 Conn. App. 249, 252, 269 A.3d 870, cert. denied, 343 Conn. 901, 272 A.3d 199 (2022).] The Shot Spotter detected a total of nine gunshots. Bridgeport Police reviewed the surveillance cameras in the area and determined that the shots originated from a two-door Dodge Challenger. A closer examination of the area surveillance revealed that the driver of the Challenger wore a white shirt. At 2:15 a.m., the Bridgeport Police made an investigatory stop of a Dodge Challenger in proximity of the Shot Spotter activation. The car was registered to [the defendant], who, at the time of the stop, was wearing a white shirt. Moreover, he volunteered to the police that he was the individual who had interacted with them at the time [the] police were investigating

the defendant's arrest, Coutant prepared a violation of probation warrant. Coutant believed that probable cause existed that the defendant had violated his probationary conditions because, as he later testified at the probation violation hearing, "[h]e was arrested for possession of ammunition," which constituted a violation of a "criminal law in . . . this state . . . ." Moreover, he believed that probable cause existed that the defendant had violated the condition of his probation that he "[s]ubmit to any medical and/or psychological examination, urinalysis, alcohol and/or drug testing, and/or counseling sessions required by the court or the probation officer" because he had "failed to attend Southwest when asked; he did not go into detox; and he rendered several urinalysis [that tested positive] for alcohol." Coutant signed the warrant for violation of probation on July 6, 2023, and the state's attorney's office submitted it to the court on July 13, 2023, at which time it was signed by the court. The court, *McShane, J.*, conducted a three day probation violation hearing. The evidentiary phase began on January 31 and concluded on February 14, 2024. At the conclusion of evidence, the court heard arguments from the parties. The state argued that it had met its burden of demonstrating by a preponderance of the evidence that the defendant had failed to comply with the conditions of his probation which, according to the state, included requirements "[that he] comply with AIC, substance abuse [evaluation], and treatment, provide random urines, possess no narcotics, weapons, or drugs, participate in Project Safe Neighborhood, and maintain employment." Defense counsel argued, in relevant part: "I acknowledge that [the defendant] did provide urines to probation that did test positive for alcohol. I would note for the court that he was going to Southwest. That he

the shots fired. The officers who conducted the stop were aware that [the defendant] had a record and that he was currently on probation. The police search[ed] the car and, in a locked glove compartment, found thirteen live rounds of nine millimeter ammunition. . . . [The defendant] was arrested on scene and taken into custody." (Footnote omitted.) The defendant filed a motion to suppress the evidence obtained at the time of his arrest, arguing that both the stop and search of his vehicle were unlawful and improperly predicated on the fact that the police officers involved knew of the defendant's probationary status.

did try to get engaged in treatment. However, it seems that when he showed up, he did test positive for alcohol. . . . I don't think that his levels at that point were over the legal limit, but he did test positive for alcohol when he went to Southwest to receive treatment. It seems surprising or shocking to me that Southwest isn't better equipped to get someone engaged in treatment when they show up there testing positive. It would seem to me that the answer wouldn't be, well, we're going to turn him away because he's positive for alcohol. He's there because he needs the treatment. He showed up. He met with his probation officer. He complied with home visits and office visits, and he provided urines to the Office of Adult Probation. I think, based on all of that, the state has not met its burden in this particular case."

The court disagreed, ruling on the record as follows: "As the parties are well aware, to satisfy due process, they must be afforded a full and fair two part hearing prior to probation being revoked, if it's going to be revoked at all. And the parties are well aware of what the burden of proof is in this particular case. . . . [Coutant] testified, and I find him very credible. I find that he has satisfied the burden, so to speak, and that the court finds by a fair preponderance of the evidence the defendant . . . violated conditions of his probation.

"Specifically, he failed to comply with conditions regarding counseling as deemed necessary and appropriate by the Office of Adult Probation. I'm not going to go into whether or not that subsequent arrest [for criminal possession of ammunition] qualifies as grounds for violation of probation because, quite frankly, I haven't ruled on whether or not the stop and/or subsequent seizure is proper under our law. So, with that, by a fair preponderance of the evidence, I find the defendant is, in fact, in violation of his probation."[7]

---

[7] In a memorandum of decision dated the day before the dispositional phase of the probation violation hearing, the court denied the defendant's motion to suppress evidence obtained in conjunction with his June 30, 2023 arrest. The defendant does not challenge that ruling on appeal. On March 8, 2024, the defendant pleaded nolo contendere to

The court conducted the dispositional phase of the probation violation hearing on February 23, 2024. The state took the position that the defendant's probation should be revoked. The prosecutor noted that the defendant owed eight years of incarceration on the unsuspended portion of the underlying fifteen year sentence for which he was found in violation of his probation. The prosecutor further argued that, in addition to the pending felony ammunition case, the defendant's criminal history included a 2005 conviction for failure to appear and a related 2007 conviction for violation of probation. Also in 2007, the defendant was convicted of possessing a pistol without a permit and later was convicted of violating his probation in relation to that conviction. Although defense counsel acknowledged that the defendant was "struggling with alcohol," that some of the defendant's urine samples had tested positive for alcohol, and that the defendant had presented to Southwest intoxicated, counsel argued that the defendant nonetheless had attempted "to get engaged in treatment." The defendant addressed the court on his own behalf, stating in relevant part that he understood that he was required to attend sessions at Southwest sober and that he would be sent home if his Breathalyzer test showed a positive blood alcohol content. The defendant also conceded that he was using alcohol during his probation, had provided urine samples that tested positive for alcohol, and attended Southwest while intoxicated.

one count of criminal possession of ammunition in violation of General Statutes § 53a-217 and was sentenced by the court, *Jones*, *J.*, to two years of incarceration. Because the trial court expressly declined to decide whether the defendant's arrest on the criminal possession of ammunition charge constituted an independent basis for finding that he violated the conditions of his probation, we need not consider what effect, if any, his subsequent conviction on that charge has regarding the court's finding of a probation violation. See, e.g., *State* v. *Rodriguez*, 320 Conn. 694, 695, 132 A.3d 731 (2016) (holding that, by pleading guilty to attempt to commit arson while he was on probation, defendant rendered moot appellate claim that evidence was insufficient to support trial court's finding that he violated terms of his probation to refrain from violating any criminal laws).

On the basis of the evidence presented, the court found that the ends of probation were no longer being met and that probation no longer served a useful rehabilitative purpose. In particular, the court found that the defendant had failed to make "sincere and legitimate attempts to get counseling" or "legitimate attempts" to get inpatient counseling. The court explained on the record: "I recognize admitting you have a problem is the first step. But it would have been the step you needed to take in order to get inpatient [counseling] and you didn't do that. There is [the] fact that your prior history indicates that you had a violation of probation in which you did not successfully complete. I take that into consideration. I also take into consideration not just a *Payne* violation[8] . . . but the fact that it's of similar conduct. And that is, it's not possession of a pistol without a permit or not criminal possession of a firearm, but it is a criminal possession of ammunition. I've taken all of this into consideration. And like I said, which I keep going back to, is the [defendant] had fifty-three days left of probation. So, I have taken that overriding concern into my—into my calculation so to speak . . . ." **(Footnote added.)** The court revoked the defendant's probation and sentenced him to serve thirty months of his previously suspended eight years of incarceration. This appeal followed.

We begin with principles of law governing our review. A defendant's rights attendant to a probation violation hearing are well settled. "The hearing itself involves two distinct components. Initially, the court conducts an

---

[8] See *Payne* v. *Robinson*, 207 Conn. 565, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988). In Payne, our Supreme Court held that the exclusionary rule did not apply under the circumstances of that case but left open "whether the exclusionary rule would apply in probation revocation proceedings when the police officer who had conducted the search was aware or had reason to be aware of the suspect's probationary status. If illegally obtained evidence was admissible in such circumstances, the police officer might very well discount the fact that such evidence was inadmissible at a criminal trial, believing that incarceration of the probationer would instead be achieved through the revocation of his probation. Application of the exclusionary rule to the probation [revocation] hearing might therefore contribute significantly to the deterrence of illegal searches." Id., 573.

adversarial evidentiary hearing to determine whether the defendant has indeed violated a condition of probation. . . . The state must establish a violation of probation by a fair preponderance of the evidence. . . . That is to say, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. . . . This court will not disturb a trial court's factual determination that a violation has occurred unless that determination is clearly erroneous. . . .

"Second, if the evidence supports a violation, the court exercises its discretion and determines whether the beneficial, rehabilitative purposes of probation are still being served or whether the need to protect the public outweighs the probationer's interest in liberty. . . . Thus, an appellate court will affirm an exercise of discretion reinstating an original sentence or ordering incarceration, absent a manifest abuse of discretion or injustice requiring reversal. . . .

"Probation revocation proceedings fall within the protections guaranteed by the due process clause of the fourteenth amendment [to] the federal constitution.[9] . . . Probation itself is a conditional liberty and a privilege that, once granted, is a constitutionally protected interest. . . . [Accordingly] [t]he revocation proceeding must comport with the basic requirements of due process because termination of that privilege results in a loss of liberty." (Citations omitted; footnote added; footnote omitted; internal quotation marks omitted.) *State* v. *Reilly*, 60 Conn. App. 716, 725–26, 760 A.2d 1001 (2000).

"Where noncriminal activity forms the basis for the revocation of probation, due process requires specific knowledge that the behavior involved is proscribed. [W]here the proscribed acts are not criminal, due process

[9] The due process clause of the fourteenth amendment to the federal constitution provides in relevant part: "[N]or shall any State deprive any person of life, liberty or property, without due process of law . . . ." U.S. Const., amend. XIV, § 1.

mandates that the [probationer] cannot be subject[ed] to a forfeiture of his liberty for those acts unless he is given prior fair warning." (Footnote omitted; internal quotation marks omitted.) Id., 729. "The purpose of notice of conditions is to ensure that the probationer understands the precise terms of his obligations and that he risks termination of his probation if he fails to meet those obligations." Id., 728. "Written conditions of probation formally imposed by a court order usually provide notice sufficient to satisfy due process. Therefore, where there is an alleged violation of an explicit condition, it would be difficult for a defendant to claim successfully that he was denied due process on the ground of no fair notice. Obviously, a finding of actual notice impliedly includes a finding of fair notice." (Footnote omitted.) Id. "[T]he interpretation of a probation condition and whether it affords a probationer fair warning of the conduct proscribed thereby are essentially matters of law and, therefore, give rise to de novo review on appeal." (Internal quotation marks omitted.) Id., 727–28. With these general principles and standards of review in mind, we turn to the defendant's claims on appeal.

I

The defendant first claims that the court's finding that he had violated his probation by failing to submit to counseling as required by the terms of his probation was clearly erroneous. Having reviewed the hearing transcript along with the evidence submitted at the hearing, we conclude that the state presented evidence sufficient to induce in the trial court a reasonable belief that it was more probable than not that the defendant had violated a condition of his probation. Accordingly, we reject the defendant's claim.

As previously stated, we review a court's finding that a defendant violated the conditions of his probation for clear error. In determining whether a finding is clearly erroneous, it is not the role of this court to weigh the evidence presented or to evaluate the credibility of witnesses. See *Milazzo-Panico* v. *Panico*, 103 Conn. App.

464, 469–70, 929 A.2d 351 (2007). Rather, "[a] finding of fact is clearly erroneous when there is *no* evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Emphasis added; internal quotation marks omitted.) *State* v. *Megos*, 176 Conn. App. 133, 141, 170 A.3d 120 (2017). In making its factual determination regarding whether the defendant violated the conditions of his probation, the trial court, as the trier of fact, is entitled to draw any reasonable and logical inferences from the evidence presented. See *State* v. *McElveen*, 69 Conn. App. 202, 205, 797 A.2d 534 (2002).

In his appellant's brief, the defendant contends that the record shows that he actively engaged with Coutant to find suitable counseling, including by participating in intake interviews for both Southwest and First Step, and that the state has not proved, on the basis of Coutant's testimony, that any shortfall in his performance rose to the level of a failure to complete either program or thus constituted a violation of probation. He acknowledges that Coutant testified that the defendant was not forthcoming during the intake process with First Step about the extent of his alcohol use—the result of which was his previous release from Southwest and rejection from First Step—but argues that Coutant's testimony was contradictory and not credible. The defendant also directs our attention to the fact that Coutant suggested that, if the defendant had not been arrested on the ammunition charge, he would have continued working with the defendant to find appropriate treatment. He argues that it "sets an absurd and unworkable precedent" to conclude that the defendant "may be violated and incarcerated based solely on [Coutant's] testimony." We disagree.

The court found that Coutant's testimony was credible, and the court was entitled to credit any portion of

his testimony and to draw any reasonable inferences that flowed from his testimony. Our review of the record reveals that the state presented evidence that the defendant had failed regularly to attend his counseling sessions with Southwest and routinely violated Southwest's requirement that he not test positive for alcohol in order to receive counseling. Although the defendant argues that the record shows that he submitted to the intake processes, the court assessed that the defendant's attempts at seeking treatment were insincere, and his marginal efforts at compliance did not negate his continued use of alcohol and his refusal to admit to the same, which resulted in him not participating in the programs and treatment that his probation officer required of him. In short, the court's finding that the defendant had violated his probation was not clearly erroneous because that finding is supported by evidence in the record and we are not left with a definite and firm conviction that a mistake was made.

## II

The defendant also claims that he lacked adequate notice that, in order to successfully submit to treatment as required under the conditions of his probation, he needed to gain admission into a specific treatment program or to admit that he had an alcohol abuse problem. We conclude that the defendant had sufficient notice of the terms of his probation to satisfy the requirements of due process.

To comport with due process, conditions of probation must provide a person of ordinary intelligence with the opportunity to understand his obligations under the terms that he has reviewed and agreed to follow. See *United States* v. *Johnson*, 446 F.3d 272, 280 (2d Cir. 2006). "[F]air warning [of a probation order] is not to be confused with the fullest, or most pertinacious, warning imaginable. Conditions of probation do not have to be cast in letters six feet high, or to describe every possible permutation, or to spell out every last, self-evident [detail. . . . Conditions] of probation may afford fair warning

even if they are not precise to the point of pedantry. In short, conditions of probation can be written and must be read in a commonsense way." (Internal quotation marks omitted.) *State* v. *Gaymon*, 93 Conn. App. 569, 574–75, 889 A.2d 880, cert. denied, 277 Conn. 927, 895 A.2d 799 (2006).

This court previously has rejected a claim that a defendant's probation was improperly revoked because he lacked notice of the particular treatment program that his probation officer directed him to attend. See *State* v. *DeMasi*, 34 Conn. App. 46, 52–53, 640 A.2d 138, cert. denied, 230 Conn. 906, 644 A.2d 920 (1994). In *DeMasi*, the defendant was found to have violated a special condition of his probation ordering "such inpatient or outpatient psychological and psychosexual treatment as is deemed appropriate and/or necessary by the department of adult probation . . . ." (Internal quotation marks omitted.) Id., 48. One of the claims that the defendant asserted in his appeal from the judgment of violation of probation was that his probation officer had somehow changed the conditions of his probation by requiring him to attend a particular sex offender treatment program and that he should have received formal notice of that change. Id., 52. This court rejected that claim, explaining as follows: "When the defendant was placed on probation, one of the conditions was that he receive 'such inpatient or outpatient psychological and psychosexual treatment as is deemed appropriate and/or necessary by the department of adult probation.' . . . The probation officer was to determine which program the defendant must attend. Therefore, the insistence by [the probation officer] that the defendant attend a certain program was consistent with the conditions of probation as imposed." (Emphasis omitted.) Id., 52–53.

In the present case, the defendant reviewed the terms of his probation prior to his release and, through his signature, agreed to abide by those terms. One of the conditions of the defendant's probation, which were admitted into evidence at the hearing, was that he "submit to

*any . . .* counseling sessions required by the Court *or the Probation Officer.*" **(**Emphasis added.**)** In addition, one of the special conditions of probation imposed by the court was that the defendant undergo substance abuse evaluation and treatment. As was the case in *DeMasi*, the clear language of the conditions of probation required the defendant to attend whatever treatments his probation officer required. A person of ordinary intelligence, reading the conditions of probation in a commonsense way, would understand that, in order to comply with the express requirement that he submit to any counseling sessions required by his probation officer, the defendant would need to make a reasonable effort also to comply with any prerequisites or conditions necessary to enter and remain in the treatment or counseling program he was directed to attend. The fact that the conditions of probation did not expressly require him to gain admission into a specific treatment program or to admit that he has an alcohol problem does not mean that he lacked sufficient notice of the terms of his probation.

We agree with the state that the conditions of probation did not have to refer to a particular treatment program in order to comport with due process. The conditions that the defendant agreed to follow, namely that he attend counseling sessions and undergo substance abuse evaluation and treatment, particularly when read in conjunction with one another, provided the defendant with reasonable notice that he was required to submit to whatever treatment program his probation officer deemed appropriate and ordered him to attend. By only sporadically attending treatments at Southwest, many times being sent home for failing a blood alcohol test, and not admitting to having an alcohol problem so as to enable him to get the substance abuse treatment that he clearly needed and that was ordered by the court as a special condition of his probation, he failed to act reasonably to meet the conditions clearly required by

the terms of his probation. Accordingly, we reject the defendant's claim.

## III

Finally, the defendant claims that the court abused its discretion when it revoked his probation and sentenced him to incarceration because the beneficial aspects of probation were still being served. Having reviewed the record before us, we conclude that the court's decision to revoke the defendant's probation and order a period of incarceration was an appropriate exercise of judicial discretion. Accordingly, we also reject this claim.

As previously stated in this opinion, the standard of review of the trial court's decision following the sentencing phase of the revocation of probation hearing is whether the trial court properly exercised its discretion. "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only [if] an abuse of discretion is manifest or where injustice appears to have been done. . . . On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . [and] . . . require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with broad discretion. . . . In determining whether to revoke probation, the trial court shall consider the beneficial purposes of probation, namely rehabilitation of the offender and the protection of society. . . . The important interests in the probationer's liberty and rehabilitation must be balanced, however, against the need to protect the public." (Internal quotation marks omitted.) *State* v. *Megos*, supra, 176 Conn. App. 148–49.

The record reveals that the court carefully considered that the defendant had nearly completed his probation, noting that, by the court's calculations, he had only fifty-three days left. The court, however, also weighed a number of other factors, including his prior criminal

record and the charges involved, a previous violation of probation, and the pending felony criminal charge.[10] Although eight years remained on the suspended portion of the defendant's original sentence, the court nevertheless elected to impose only a thirty month period of incarceration.[11] We are convinced that the trial court had ample evidence before it to support its finding that the beneficial purposes of probation no longer were being served and conclude that the court did not abuse its discretion by revoking probation and imposing a thirty month sentence of incarceration.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] We again note that the court did not base its substantive violation of probation finding on this charge or the conduct allegedly underlying it. It is axiomatic that a defendant's mere arrest on a criminal charge is not a sufficient basis for finding that he committed the charged offense or that, because of the arrest, he violated his probation. Because, however, a court properly may consider a defendant's misconduct in a sentencing proceeding even if it has never led to a conviction, and the defendant has not challenged its use for that purpose in this case, we have no occasion to review the appropriateness of the court's consideration of such evidence here, as it had been presented to a judge and found to establish probable cause for the defendant's warranted arrest in relation to the defendant's sentencing for violation of probation.

[11] The court stated the following on the record prior to sentencing: "You know, some judges, they get a violation of probation. They have a hearing and their jobs are easy. I'm hearing violation. That the probation is no longer serving a useful rehabilitative purpose. How much time they have hanging, give them that time. It's not a lot of thought processes involved. But I've been thinking about this case a lot. And you know it's what your lawyer said and what you said . . . . You had served four years [and] ten months on probation. Three of those years were JAMS. I [have] been around long enough to know about JAMS. . . . The people who go to JAMS are the people who were doing well on probation. And I, you know, this could be very easy sentencing. I say you owe eight, do the eight, see you later. That's it. But I'm not going to do that. And I'm not going to do that because, as I said, by the time this was signed by a judge of the Superior Court, which tolled the probation, you had fifty-three days remaining."