STATE OF CONNECTICUT *v.* RAYMOND RIVERA
(AC 31733)

DiPentima, C. J., and Beach and Bear, Js.

Argued January 20—officially released June 28, 2011

*John C. Drapp III*, special public defender, with whom, on the brief, was *Joseph A. Jaumann*, special public defender, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *David Shannon*, assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Raymond Rivera, appeals from the judgment of conviction, rendered after a jury trial, of two counts of assault in the third degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-61 (a) (1) and one count of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (4). This appeal arises out of the state's use of consensually admitted evidence containing a hearsay statement that the defendant successfully had excluded when it was offered into evidence through testimony. Specifically, the defendant claims that (1) his rights to confrontation as guaranteed by the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution were violated when hearsay evidence of a statement given by the victim to police was admitted at trial and (2) the prosecutor committed impropriety that deprived him of a fair trial when he knowingly referenced the

victim's hearsay statement in closing argument. We disagree, and, accordingly, affirm the judgment of the trial court.

The relevant underlying facts are not in dispute. At approximately 10 p.m. on April 1, 2008, the victim, Jeremy Jweinat, was filling his car with gasoline at the Food Bag gasoline station and convenience store at 63 Main Street, Danbury, when he was assaulted by a group of individuals. The individuals who attacked the victim arrived at the scene in a white Chevrolet Blazer sport utility vehicle (Blazer) driven by Alexander Jones. Anne Brandon, who was passing by the Food Bag at this time, saw the assault begin and telephoned 911 before turning her car around and stopping it right in front of the assault. Brandon tried to stop the assault by honking her car horn and flashing her car's headlights. Abruptly, the attackers fled the scene on foot and Brandon attempted to follow them in her car. After the attackers fled, Jones drove the Blazer away. Shortly thereafter, officer Gregory Topa of the Danbury police department arrived on the scene and spoke with the victim.

After Topa was at the scene for approximately ten minutes, police dispatch notified him that the suspects were driving a white sport utility vehicle and were then located at a Walgreens pharmacy two blocks north of the Food Bag. Topa and several other officers responded and, after encountering a white sport utility vehicle in the middle of the Walgreens parking lot, the officers executed a felony stop[1] and detained the vehicle's five occupants: Jones, Luis Rivera, Watts Briley,

---

[1] Topa testified that a "felony stop" is a manner of detaining suspects during a traffic stop when the officer has cause to fear for his or her safety. Instead of approaching the vehicle, the officer uses the public address system in his or her police cruiser to address the vehicle's occupants, and asks each individual to exit the vehicle separately so that each may be secured one by one. See also State v. Kalican, 110 Conn. App. 743, 747, 955 A.2d 1261, cert. denied, 289 Conn. 949, 960 A.2d 1038 (2008).

John Damasceno and the defendant. The defendant, Luis Rivera, Briley and Damasceno subsequently were arrested in connection with this assault. This felony stop was recorded on the ICOP camera system in Topa's police cruiser.[2]

By long form information, the state charged the defendant with three counts of assault in the first degree, one count of attempt to commit assault in the first degree and two counts of conspiracy to commit assault in the first degree. Prior to trial, the state informed the defendant that the victim was unavailable to testify.[3] Consequently, the defendant filed a motion in limine seeking to preclude, inter alia, any testimony by Brandon or Topa concerning the victim's identification of the defendant as one of his attackers. On August 11, 2009, the first day of trial, the court deferred ruling on this portion of the defendant's motion in limine until hearing the state's offer of proof. The court, however, required the state to instruct its witnesses not to testify to the victim's statement identifying the defendant as his attacker until the court first ruled on its admissibility.

During its case-in-chief, the state called Topa as a witness. On direct examination, the state offered into evidence a copy of the ICOP recording taken from Topa's police cruiser on the night of April 1, 2008. The court asked the defendant if he had any objection to this evidence, to which counsel for the defendant replied: "No objection, Your Honor."[4] The recording

[2] Topa testified that the ICOP system in his police cruiser is a two camera recording system that is activated when the police cruiser's overhead lights are turned on. Both cameras are stationed near the police cruiser's rearview mirror; one records video facing outward over the hood of the car and the other records video looking into the cruiser's backseats. The ICOP system also records audio.

[3] In its brief to this court, the state represents that prior to trial, the victim joined the United States Air Force and was stationed in Guam.

[4] Previously, when the state sought to introduce into evidence as a full exhibit the audio recording of two 911 telephone calls made on the night of the incident, counsel for the defendant objected on the ground that the 911 call allegedly made by John Maganaro might contain inadmissible

was then admitted into evidence as a full exhibit. While the ICOP recording was played to the jury, Topa provided an explanation.

At a certain point the state stopped the ICOP recording and asked Topa if he had spoken with the victim while he was at the Food Bag on April 1, 2008, and what, if anything the victim had said to him. Counsel for the defendant promptly objected, and the court excused the jury so that it could hear argument from counsel on the matter. Outside the jury's presence, the state made the following offer of proof:

"[The Prosecutor]: You can answer the question now, what . . . specifically, did you ask the victim, Jeremy?

"[Topa]: I asked him what happened to [him on] the night of the incident and who assaulted him.

"[The Prosecutor]: And what did he say?

"[Topa]: He said [the defendant].

"[The Prosecutor]: Okay. Did he name any other individuals?

"[Topa]: No.

"[The Prosecutor]: That was the only name he gave you?

"[Topa]: Yes."

The court determined that although the victim's statement to Topa was admissible under the spontaneous utterance exception to the hearsay rule, the statement was testimonial in nature. Accordingly, the court concluded that because the defendant was not given an opportunity to cross-examine the victim, Topa's testimony as to what the victim recounted to him on the

"hearsay information." The state, however, agreed to redact the contested call from the audio recording and the recording containing only one 911 telephone call was admitted into evidence.

night of the assault was inadmissible as a violation of the defendant's sixth amendment right of confrontation pursuant to *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Consequently, the state did not elicit the victim's statement from Topa, nor did the state elicit it from any other witness.[5]

During closing argument at the end of trial, counsel for the defendant twice played a portion of the ICOP recording to the jury and, thereafter, argued that the defendant was at the scene but that he was attempting to stop the fight and did not participate in the assault.[6] In its rebuttal closing argument, the state played a different portion of the ICOP recording to the jury. Prior to playing the ICOP recording, the prosecutor stated to the jury: "Okay. Before we start this, you saw this ICOP [recording] . . . . I just want you to listen to this, and before we play it, [Topa] testified that his Sergeant Sturdevant showed up at the scene and asked him what happened, right. . . . So, [Topa] says . . . you hear [Topa] respond, and you may not have caught this the first time, but could we play it? Can you turn the volume up?"

The prosecutor then played the ICOP recording, stopped it and then stated to the jury the following: "Did you hear that? [Topa] says, 'when I asked the

[5] After the state rested its case, the defendant moved for a judgment of acquittal on all charges. The court denied the defendant's motion with respect to counts one (attempt to commit assault in the first degree), two (assault in the first degree as an accessory), four (assault in the first degree) and five (assault in the first degree as an accessory). The state subsequently filed a three count, amended long form information, charging: assault in the first degree in violation of §§ 53a-8 and 53a-59 (a) (1), assault in the first degree in violation of §§ 53a-8 and 53a-59 (a) (4) and attempt to commit assault in the first degree in violation of §§ 53a-49 (a) (2) and 53a-59 (a) (4).

[6] Transcripts from the trial court do not indicate which portion of the ICOP recording was played by counsel for the defendant. At 22:30:18 of the recording, however, one of the parties detained by the police during the April 1, 2008 felony stop at the Walgreens pharmacy can be overheard stating: "Stopping the fight."

victim who did it, he said [the defendant], he didn't name any other names but that.' That's it. . . . Why is the victim in this case, bleeding from his face, his head, his hand, why is he telling the officer the guy who did it was [the defendant], if that wasn't the case? Can anybody come up with a reason? I mean, was he sitting there, after just getting beaten down, pummeled, is he going to say, you know, I don't really know who did this, but I never liked [the defendant], so let me say it was him? No, that's it, you heard it from the victim's mouth—or I'm sorry, you heard it from [Topa], who heard it from the victim. I think he even says that he threw the bottle."[7] Counsel for the defendant asked to have the jury excused and then objected to the prosecutor's closing remarks. The following colloquy between the court and defense counsel then ensued:

"[Defense Counsel]: Based on what we are hearing here, Your Honor, I hadn't heard it before either—

"The Court: It's in evidence.

"[Defense Counsel]: As we indicated before, this tape had been provided to me beforehand, but I could never hear anything, I didn't think that there was any voice when we had it in here.

"The Court: There was—there was voice on it before, Ms. Comstock almost broke the speakers, when she put them on earlier.

"[Defense Counsel]: Yes, Your Honor, but your—

"The Court: I mean, it's in evidence. There was— there was sound with it. I think—I think, what I remember most about the sound was the windshield wipers keep going, that's what I remember most—

---

[7] The transcripts do not reflect what portion of the ICOP recording was played. However, both parties agree that on the relevant portion of the ICOP recording, a police officer can be heard recounting: "When I asked the victim who did it, he said [the defendant], he didn't name any other names but [the defendant]."

"[Defense Counsel]: No, I understand.

"The Court:—but there was sound with it.

"[Defense Counsel]: Is it—well, Your Honor had made a ruling about the hearsay statements being made and this is a hearsay statement being made by—

"The Court: Listen, the tape's in evidence. There was no—it came in, there were no exclusions to it. It came in, you agreed that it was going to come in, it's a piece of evidence, the—the tape was played earlier, it was played during the trial. So, is there an objection pending?

"[Defense Counsel]: Yeah, I had an objection to it based on the fact that you had made an earlier ruling about the—

"The Court: Well, too late now, it's already in evidence.

"[Defense Counsel]: All right. Just note my objection."

Counsel for the defendant did not seek to strike the ICOP recording from evidence or have the contested portion redacted, nor did counsel seek a mistrial. The jury returned and, subsequently, returned a verdict of not guilty on the two counts of assault in the first degree, but guilty as to two counts of the lesser included offenses of assault in the third degree and guilty as to the count of attempt to commit assault in the first degree. The court rendered judgment in accordance with the jury's verdict and, merging counts one and two with count three, sentenced the defendant to twelve years incarceration. This appeal followed.

I

The defendant first claims that his constitutional right of confrontation was violated when the ICOP recording

containing an officer's statement that the victim had identified the defendant as his attacker was heard by the jury. Specifically, the defendant argues that the victim's statement was testimonial hearsay and because he was not provided with an opportunity to cross-examine the victim, its admission into evidence was a violation of his state and federal rights of confrontation.[8] The defendant concedes that he did not object to the admission of the ICOP recording and seeks review of his claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The state, in reply, contends that (1) the defendant waived review of his claim by consenting to the admission of the ICOP recording, (2) the victim's statement was not testimonial hearsay and (3) the statement's admission into evidence was harmless beyond a reasonable doubt. We agree with the state that the defendant has waived this claim.

Pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free,

---

[8] The defendant does not contend, however, that the state constitution affords him any greater protection than that afforded under the federal constitution. "We note, moreover, that we interpret the confrontation clause of the Connecticut constitution in the same manner as its federal counterpart." (Internal quotation marks omitted.) *State* v. *Portee*, 55 Conn. App. 544, 549 n.4, 740 A.2d 868 (1999), cert. denied, 252 Conn. 920, 744 A.2d 439 (2000).

therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) "Whether a claim has been waived implicates the third prong of *Golding*, and if the claim has been waived, it fails because the defendant cannot demonstrate that a constitutional violation clearly exists." *State* v. *Smith*, 289 Conn. 598, 620, 960 A.2d 993 (2008).

"[T]he [s]ixth [a]mendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the [s]tates by the [f]ourteenth [a]mendment." *Pointer* v. *Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). "It is well settled [however] that a criminal defendant may waive rights guaranteed to him under the constitution"; *State* v. *Smith*, supra, 289 Conn. 620; even those considered "fundamental"; see *State* v. *Fabricatore*, 281 Conn. 469, 478, 915 A.2d 872 (2007); such as the right of confrontation. See *Diaz* v. *United States*, 223 U.S. 442, 450, 32 S. Ct. 250, 56 L. Ed. 500 (1912) (defendant free to assert or waive right of confrontation "as to him may seem advantageous"). "[W]aiver is the intentional relinquishment or abandonment of a known right"; (internal quotation marks omitted) *United States* v. *Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); and "[t]here is a presumption against the waiver of constitutional rights . . . ." (Citation omitted.) *Brookhart* v. *Janis*, 384 U.S. 1, 4, 86 S. Ct. 1245, 16 L. Ed. 2d 314 (1966); see also *State* v. *Smith*, supra, 620 ("[w]ith respect to a fundamental right such as the right of confrontation, we must indulge every reasonable presumption against waiver" [internal quotation marks omitted]).

The defendant does not quarrel with these general pronouncements concerning waiver; rather, he maintains that the posture of this case reveals that his counsel consented to the admission of the ICOP recording without knowing that on it an officer could be heard

recounting the same statement made by the victim which his counsel had sought to exclude prior to trial. Thus, the defendant argues, his counsel's consent was not the "intentional relinquishment or abandonment of a known right or privilege"; see *United States* v. *Olano*, supra, 507 U.S. 733; required to effect a valid waiver as that term is understood in the relevant case law. We disagree.

"The mechanism by which a right may be waived . . . varies according to the right at stake." (Internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 71, 967 A.2d 41 (2009). "For certain fundamental rights, the defendant must personally make an informed waiver. See, e.g., *Johnson* v. *Zerbst*, 304 U.S. 458, 464–65 [58 S. Ct. 1019, 82 L. Ed. 1461 (1938)] (right to counsel); *Brookhart* v. *Janis*, [supra, 384 U.S. 7–8] (right to plead not guilty). For other rights, however, waiver may be effected by action of counsel." *New York* v. *Hill*, 528 U.S. 110, 114, 120 S. Ct. 659, 145 L. Ed. 2d 560 (2000). "[H]aving made the knowing, intelligent and voluntary choice to avail himself of the services of counsel, a defendant necessarily surrenders to that counsel the authority to make a wide range of strategic and tactical decisions regarding his case." *State* v. *Gibbs*, 254 Conn. 578, 610, 758 A.2d 327 (2000). "[D]ecisions by counsel are generally given effect as to what arguments to pursue . . . what evidentiary objections to raise . . . and what agreements to conclude regarding the admission of evidence . . . . Absent a demonstration of ineffectiveness, counsel's word on such matters is the last." (Citations omitted.) *New York* v. *Hill*, supra, 114.

In a case with facts similar to the present case, the issue of waiver was addressed by the United States Court of Appeals for the Tenth Circuit in *Hawkins* v. *Hannigan*, 185 F.3d 1146 (10th Cir. 1999). In *Hawkins*, the defendant faced multiple charges in a Kansas court

in connection with the rape of a ninety-two year old woman. Id., 1148, 1151. At trial the defendant's counsel stipulated to the admissibility of "hearsay evidence pertaining to any description or identification given by the victim . . . ." (Internal quotation marks omitted.) Id., 1150. Counsel apparently understood this stipulation to include audiotapes of the victim's prior interviews with police, but was unaware that it would also cover the hearsay testimony of a police officer that the victim previously had identified the defendant from a photographic lineup. Id., 1154. The defendant was convicted and the Kansas Supreme Court affirmed his conviction on direct appeal. Id., 1151. Thereafter, the defendant filed a petition for a writ of habeas corpus with the United States District Court alleging that he was denied his right to effective assistance of counsel and his right to confront the witnesses against him. Id.

On review of the District Court's denial of habeas corpus, the Tenth Circuit concluded that counsel for the defendant validly had waived his client's sixth amendment right of confrontation by entering into the stipulation, despite counsel's apparent confusion regarding the scope of the evidence that was covered, and that entering into the stipulation was not ineffective assistance of counsel. Id., 1155–56. In so concluding, the Tenth Circuit relied on three opinions from other circuits of the United States Court of Appeals for the proposition that "counsel in a criminal case may waive his client's [s]ixth [a]mendment right of confrontation by stipulating to the admission of evidence, so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy." (Internal quotation marks omitted.) Id., 1155, citing *United States* v. *Stephens*, 609 F.2d 230, 232–33 (5th Cir. 1980), *Wilson* v. *Gray*, 345 F.2d 282, 286 (9th Cir.), cert. denied, 382 U.S. 919, 86 S. Ct. 288,

15 L. Ed. 2d 234 (1965), and *Cruzado* v. *People,* 210 F.2d 789, 791 (1st Cir. 1954). The Tenth Circuit determined that defense counsel's stipulation was a "prudent trial decision" because the reasons for entering into the stipulation, to avoid the live testimony of a frail, elderly rape victim, "far outweigh[ed] any reason not to enter it . . . ."[9] *Hawkins* v. *Hannigan,* supra, 185 F.3d 1155.

Consistent with the Tenth Circuit, and in line with the majority of other federal circuit courts of appeal that have addressed the issue, the Second Circuit has concluded that "defense counsel may waive a defendant's [s]ixth [a]mendment right to confrontation where the decision is one of trial tactics or strategy that might be considered sound." *United States* v. *Plitman,* 194 F.3d 59, 64 (2d Cir. 1999); see also *United States* v. *Cooper,* 243 F.3d 411, 418 (7th Cir.) ("a defendant's attorney can waive his client's [s]ixth [a]mendment confrontation right so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy" [internal quotation marks omitted]), cert. denied, 534 U.S. 825, 122 S. Ct. 64, 151 L. Ed. 2d 31 (2001); *United States* v. *Stephens,* supra, 609 F.2d 232–33 (same); *Wilson* v. *Gray,* supra, 345 F.2d 286 ("[i]t has been consistently held that the accused may waive his right to cross examination and confrontation and that the waiver of this right may be accomplished by the accused's counsel as a matter of trial tactics or strategy"); *Cruzado* v. *People,* supra, 210 F.2d 791 (counsel may waive defendant's sixth amendment right of confrontation, where waiver made in defendant's presence, as matter of trial tactics and defendant does not dissent from decision).

---

[9] The victim in *Hawkins* had very poor hearing and eyesight and was initially only able to provide police with a limited description of her attacker. *Hawkins* v. *Hannigan,* supra, 185 F.3d 1148.

In addition to the federal courts, the courts of other states have applied a similar, if not identical, standard. See, e.g., *Lee* v. *State*, 266 Ark. 870, 876–77, 587 S.W.2d 78 (App. 1979); *State* v. *Oyama*, 64 Haw. 187, 188, 637 P.2d 778 (1981); *People* v. *Campbell*, 208 Ill. 2d 203, 217, 802 N.E.2d 1205 (2003), cert. denied, 543 U.S. 834, 125 S. Ct. 149, 160 L. Ed. 2d 53 (2004); *Parson* v. *Commonwealth*, 144 S.W.3d 775, 783–84 (Ky. 2004); *Waldon* v. *State*, 749 So. 2d 262, 266 (Miss. App. 1999); *Carr* v. *State*, 829 S.W.2d 101, 102–103 (Mo. App. 1992); *State* v. *Bromwich*, 213 Neb. 827, 830, 331 N.W.2d 537 (1983); *Ludlow* v. *State*, 761 P.2d 1293, 1295–96 (Okla. Crim. App. 1988); *State* v. *Spooner*, 8 A.3d 469, 476 n.5 (Vt. 2010); *Bilokur* v. *Commonwealth*, 221 Va. 467, 472–73, 270 S.E.2d 747 (1980); *State* v. *Harper*, 33 Wn. App. 507, 509–10, 655 P.2d 1199 (1982).

In the present case, the record reveals that the defendant did not object to his counsel's decision to consent to the admission of the ICOP recording.[10] See *Hawkins* v. *Hannigan*, supra, 185 F.3d 1155. Thus, we turn to the requirement that counsel's decision be made pursuant to a legitimate trial tactic or as part of a trial strategy that might be considered sound or prudent. In interpreting this requirement, we are mindful of the Tenth Circuit's reasoning and holding in *United States* v. *Aptt*, 354 F.3d 1269 (10th Cir. 2004). In *Aptt*, the court observed that the circuit court opinions relied on in *Hawkins* v. *Hannigan*, supra, 185 F.3d 1155, "focused

[10] We note that the aforementioned case law indicates only that the defendant must not disagree with or object to the strategic or tactical decision of his counsel, and not that he must also be aware that his right of confrontation is implicated by his counsel's decision. In *Hawkins*, the Tenth Circuit concluded that Hawkins' right of confrontation had been waived by counsel even though on state collateral review the Kansas Court of Appeals had observed that "nothing in the record beyond the stipulation itself indicated that Hawkins knew or understood that he had a constitutional right to confront his accuser, or that by signing the stipulation, he was waiving that right." *Hawkins* v. *Hannigan*, supra, 185 F.3d 1154.

on the issue of whether the right to confront witnesses was waivable by counsel or only by the defendant personally. Thus, their common reference to 'trial tactics and strategy' were meant primarily to locate the decision to stipulate within the domain of trial strategy, where the attorney is master—not to invite subsequent tribunals to consider whether the stipulation was the wisest course of action." *United States* v. *Aptt*, supra, 1283. Because the panel could discern "no material difference" between the legitimate or prudent trial tactic inquiry enunciated in those cases and the " 'sound trial strategy' " inquiry required under *Strickland* v. *Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Tenth Circuit held that "an attorney's stipulation to admit evidence is a valid waiver unless the defendant can show that the stipulation constituted ineffective assistance under the *Strickland* test." *United States* v. *Aptt*, supra, 1284; see also *Wilson* v. *Gray*, supra, 345 F.2d 287 n.7 (citing with approval District Court's conclusion that "[a]s a practical matter a reviewing court can not find a denial of the constitutional right to cross examination merely on the basis of an error in trial tactics unless the error is so gross as to constitute a denial of adequate and effective assistance of counsel" [internal quotation marks omitted]). The court concluded that such an inquiry, which often requires development of facts not in the trial record, is best raised through a collateral attack in a habeas proceeding. *United States* v. *Aptt*, supra, 1284.

In the present case, certain portions of the ICOP recording were helpful to the defendant, and he obtained an advantage from allowing the jury to see and hear those parts. For example, after the ICOP recording was played and during her cross-examination of Topa, defense counsel highlighted the fact that the defendant was being cooperative during the felony stop and did not have any blood on his white T-shirt. Then, in closing

argument, defense counsel twice replayed a portion of the ICOP recording, claiming first that the defendant did not participate in the assault and was trying to break it up, and then later that the state had presented no evidence that the defendant had blood on his T-shirt after the assault. Counsel's use of and reference to the ICOP recording indicates that she was following a sound or prudent trial strategy when she consented to its admission.

The defendant contends that there was no waiver because the posture of this case shows unequivocally that his counsel was unaware of the presence of the hearsay statement on the ICOP recording. If true, however, such an assertion concerns his attorney's level of preparedness, not strategy. Counsel for the defendant made a decision to have the ICOP recording admitted into evidence and her reliance on portions of the recording during trial indicate that the decision was reached as a matter of trial tactics. "As to many decisions pertaining to the conduct of the trial, the defendant is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney. . . . Absent a demonstration of ineffectiveness, counsel's word on . . . matters [such as what evidentiary objections to raise] is the last." (Citations omitted; internal quotation marks omitted.) *New York* v. *Hill*, supra, 528 U.S. 115. In essence, the defendant's claim is that he received ineffective assistance of counsel. There is a well developed body of case law that protects defendants from the constitutionally deficient representation of their attorneys. See *Strickland* v. *Washington*, supra, 466 U.S. 668. Our Supreme Court has emphasized that "a habeas proceeding provides a superior forum for the review of a claim of ineffective assistance because it provides the opportunity for an evidentiary hearing in which the attorney whose conduct is challenged may

testify . . . ." *State* v. *Kitchens*, 299 Conn. 447, 496–97, 10 A.3d 942 (2011). Accordingly, because defense counsel consented to the admission of evidence that the defendant now claims deprived him of his sixth amendment right of confrontation, and thereafter used it in a manner indicating that the decision was reached as a matter of trial tactics, we conclude that the defendant has waived this claim on direct appeal. Consequently, the defendant's claim fails under the third prong of *State* v. *Golding*, supra, 213 Conn. 239–40.

## II

The defendant next claims that the prosecutor committed an act of impropriety that deprived him of a fair trial. Specifically, the defendant claims that the prosecutor committed impropriety when he played the ICOP recording during rebuttal argument and called the jury's attention to the hearsay statement, knowing that this precise statement previously had been excluded by the court during testimony. In reply, the state contends that the prosecutor's conduct was not an act of impropriety because the ICOP recording was in evidence. We agree with the state.

"In analyzing claims of prosecutorial impropriety, we engage in a two step process. . . . First, we must determine whether any impropriety in fact occurred; second, we must examine whether that impropriety, or the cumulative effect of multiple improprieties, deprived the defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Weaving*, 125 Conn. App. 41, 46, 6 A.3d 203 (2010), cert. denied, 299 Conn. 929, 12 A.3d 569 (2011). "[A]s the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.)

*State* v. *Tarasiuk*, 125 Conn. App. 544, 551, 8 A.3d 550 (2010).

The defendant contends that because the proffered testimony of Topa as to the victim's identification of the defendant was ruled inadmissible as hearsay when the state sought to offer it, the prosecutor's knowing reference to it on the ICOP recording was an act of prosecutorial impropriety. The ICOP recording, however, was consensually admitted as a full exhibit at trial. "As a general matter, a prosecutor may use any evidence properly admitted at trial. . . . [A]n exhibit offered and received as a full exhibit is in the case for all purposes." (Citations omitted; internal quotation marks omitted.) *State* v. *Camacho*, 282 Conn. 328, 377, 924 A.2d 99, cert. denied, 552 U.S. 956, 128 S. Ct. 388, 169 L. Ed. 2d 273 (2007). "[T]he prosecution, with its burden of establishing guilt beyond a reasonable doubt, is not to be denied the right to prove every essential element of the crime by the most convincing evidence it is able to produce." (Internal quotation marks omitted.) *State* v. *Nelson*, 105 Conn. App. 393, 417, 937 A.2d 1249, cert. denied, 286 Conn. 913, 944 A.2d 983 (2008). The ICOP recording was admitted as a full exhibit with the consent of the defendant, and the prosecutor's use of it was not improper.[11] Accordingly, we conclude that the prosecutor did not commit impropriety when he played and commented on the ICOP recording, which was consensually admitted as a full exhibit at trial.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] The defendant does not claim that the prosecutor's use of the ICOP recording improperly appealed to the emotions or passions of the jury. See, e.g., *State* v. *Rizzo*, 266 Conn. 171, 257–59, 833 A.2d 363 (2003).