PAUL FINE *v.* COMMISSIONER OF CORRECTION
(AC 34683)

Sheldon, Keller and West, Js.

Argued September 26—officially released December 17, 2013

*Ilana Ofgang*, assigned counsel, for the appellant (petitioner).

*Lawrence J. Tytla*, supervisory assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Marcia A. Pillsbury*, deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

KELLER, J. Following a grant of certification to appeal pursuant to General Statutes § 52-470 (g), the petitioner, Paul Fine, appeals from the judgment of the habeas court dismissing his amended petition for a writ of habeas corpus. The petitioner claims that the court, in dismissing his petition, improperly concluded that he intentionally and knowingly withdrew a prior habeas petition with prejudice, thereby waiving his right to bring the present petition. We agree with the petitioner and reverse the judgment of the habeas court.

The record reveals the following relevant procedural history. On December 23, 2011, the petitioner, through counsel, filed an amended petition for a writ of habeas corpus. In part, he alleged therein that, on June 9, 1992, pursuant to a plea agreement reached with the state, he was sentenced to a fifty year term of incarceration after pleading guilty to the crimes of murder and assault in the first degree. He alleged that, in a variety of ways, his trial counsel, Attorney Gail Heller and one or more successor attorneys, rendered ineffective assistance

and that his guilty pleas were not knowing, intelligent or voluntary. Also, he alleged that, but for the inadequate representation of his trial counsel, he would not have entered the guilty pleas.

In his return, the respondent, the Commissioner of Correction, denied some of the petitioner's allegations related to ineffective assistance of counsel and, as to others, left the petitioner to his proof. Additionally, the respondent alleged in relevant part that in a prior habeas petition filed in the judicial district of Danbury in 1997, the petitioner, represented by Attorney Vicki Hutchinson, had raised a claim of ineffective assistance of trial counsel under docket number CV-96-0325409-S. The respondent alleged: "That [the prior] habeas matter was scheduled for trial on May 4, 1998, before the Honorable Judge [Dale W.] Radcliffe. On that date, the petition was *withdrawn with prejudice*." (Emphasis in original.) The respondent raised a special defense of "waiver," and asserted that the petitioner, by withdrawing his prior habeas petition with prejudice in 1998, was precluded from raising a claim of ineffective assistance of trial counsel in the present petition. In reply to the special defense raised in the return, the petitioner left the respondent to his proof.

Thereafter, pursuant to Practice Book § 23-29 (5), the respondent filed a motion to dismiss the petition on the ground that the petitioner withdrew the prior petition with prejudice on May 4, 1998. In his memorandum of law in support of the motion, the respondent asserted that the petitioner, by withdrawing the prior petition with prejudice, waived his right to advance the claim raised in the present petition. Also, the respondent argued that the petitioner's conduct constituted "abuse of the writ." Finally, the respondent asserted an argument grounded in the concept of "deliberate bypass." In this regard, the respondent argued that the petitioner had a full and fair opportunity to litigate the claim raised

in the present petition, but that he forfeited his right to advance such claim because he voluntarily chose to withdraw his prior petition with prejudice at a time when the respondent was prepared to defend against the claim. The petitioner objected to the motion.

On April 25, 2012, the court held an evidentiary hearing on the motion to dismiss. By way of exhibits, the court had before it transcripts from court proceedings in 1992 related to the petitioner's criminal charges, a copy of the petitioner's prior revised amended petition for a writ of habeas corpus filed on July 16, 1997, and a copy of a withdrawal, dated May 4, 1998, filed in connection with that earlier petition. The court heard testimony from John Gravalec-Pannone who, in his capacity as an assistant state's attorney, represented the state in connection with the petitioner's underlying criminal trial and represented the respondent in connection with the petitioner's prior habeas petition. The court also heard testimony from the petitioner. After hearing argument from counsel, the court rendered an oral decision in which it granted the respondent's motion to dismiss.[1]

In its decision, the court observed that the present petition and the prior petition, both alleging ineffective assistance of trial counsel, were "virtually identical," and that the petitioner had conceded that this was accurate. The court found that on May 4, 1998, the petitioner "intentionally and knowingly" withdrew his prior petition with prejudice. The court observed that, although there was no transcript admitted into evidence reflecting what occurred in connection with the withdrawal on May 4, 1998, there was evidence about the proceeding, including the fact that the petitioner had

---

[1] Subsequently, the court filed a signed transcript of its decision in accordance with Practice Book § 64-1 (a).

raised a motion to replace his counsel and that, following questioning of the petitioner by the court, the petitioner withdrew the petition. The court found the testimony of Gravalec-Pannone to be credible with regard to the events at issue, namely, that the petitioner was questioned by Judge Radcliffe and that he withdrew his petition with prejudice. For his part, the petitioner testified, in essence, that he merely had followed the instructions of his attorney, Hutchinson, in connection with the withdrawal, but the court found that such testimony was not credible and only supported the conclusion that the petitioner later may have regretted his decision to withdraw the petition. Deeming the petitioner's actions to be a form of "deliberate bypass," the court granted the motion to dismiss. This appeal followed the habeas court's grant of certification to appeal.

"The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . ." (Internal quotation marks omitted.) *Grant* v. *Commissioner of Correction*, 121 Conn. App. 295, 298, 995 A.2d 641, cert. denied, 297 Conn. 920, 996 A.2d 1192 (2010).

On appeal, the petitioner argues that the court's finding that he intentionally and knowingly withdrew his prior petition with prejudice was clearly erroneous. Also, the petitioner argues that (1) the fact that he withdrew the prior petition before the commencement of a hearing on its merits did not bar the court from considering the merits of the present petition, (2) the doctrine of res judicata does not apply because the

claim in his prior petition was not actually litigated, and (3) the present case does not implicate the deliberate bypass doctrine because the sole claim raised in the prior and present petitions was based on ineffective assistance of trial counsel.

It is necessary that we accurately characterize the basis of the court's dismissal. As set forth previously, the habeas court based its decision on a critical factual determination, namely, that the petitioner intentionally and knowingly withdrew his prior petition with prejudice, thereby waiving his right thereafter to pursue the claim raised therein. Although the court reasoned that "[the petitioner's] actions constitute deliberate bypass," that doctrine does not apply to the case at hand, for it historically has arisen in the context of habeas petitions involving claims procedurally defaulted at trial and on appeal. See *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 186, 982 A.2d 620 (2009) (observing that since *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 132, 629 A.2d 413 [1993], our Supreme Court "consistently and broadly has applied the cause and prejudice standard to trial level and appellate level procedural defaults in habeas corpus petitions"). Here, the respondent invoked the doctrine of deliberate bypass insofar as he argued that the petitioner, by his conduct related to the prior habeas proceeding, voluntarily " 'forfeited' his right to have a hearing on the merits and, thus, forfeited his right to prosecute these claims." In light of the arguments advanced before the habeas court and the court's fleeting reference to "deliberate bypass" in its memorandum of decision, we interpret the court's decision to be based generally on the respondent's central argument that, in connection with the prior habeas petition, the petitioner validly waived his right to raise the ineffective assistance of counsel claim in the present petition.

In evaluating the propriety of the court's finding, that an intentional and knowing waiver occurred, we are mindful that "[t]he habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed [on appeal] unless they are clearly erroneous. . . . Thus, [t]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . Thus, the court's factual findings are entitled to great weight. . . . Furthermore, [a] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Orcutt* v. *Commissioner of Correction*, 284 Conn. 724, 741–42, 937 A.2d 656 (2007).

The right to petition for a writ of habeas corpus is enshrined in both the United States constitution and the Connecticut constitution. See U.S. Const., art. I, § 9; Conn. Const., art. I, § 12. Indeed, it has been observed that the writ of habeas corpus "holds an honored position in our jurisprudence." *Engle* v. *Isaac*, 456 U.S. 107, 126, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982). "The principal purpose of the writ of habeas corpus is to serve as a bulwark against convictions that violate fundamental fairness. . . . The writ has been described as a unique and extraordinary legal remedy." (Citation omitted; internal quotation marks omitted.) *Joyce* v. *Commissioner of Correction*, 129 Conn. App. 37, 39, 19 A.3d 204 (2011). "It must never be forgotten that the writ of habeas corpus is the precious safeguard of

personal liberty and there is no higher duty than to maintain it unimpaired." *Bowen* v. *Johnston*, 306 U.S. 19, 26, 59 S. Ct. 442, 83 L. Ed. 455 (1939).

"It is well settled . . . that a criminal defendant may waive rights guaranteed to him under the constitution . . . . [W]aiver is the intentional relinquishment or abandonment of a known right . . . and [t]here is a presumption against the waiver of constitutional rights . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Rivera*, 129 Conn. App. 619, 629, 22 A.3d 636, cert. denied, 302 Conn. 922, 28 A.3d 342 (2011). "Relevant cases instruct that [a] defendant in a criminal prosecution may waive one or more of his or her funda-mental rights. . . . In [*State* v.] *Patterson*, [230 Conn. 385, 396, 645 A.2d 535 (1994)], our Supreme Court stated that [i]n some circumstances, a waiver of rights must be knowing, voluntary and intelligent, and it must be expressly made. . . . In other circumstances, waiver can be implied." (Internal quotation marks omitted.) *State* v. *Crawley*, 138 Conn. App. 124, 132, 50 A.3d 349, cert. denied, 307 Conn. 925, 55 A.3d 565 (2012).

The legal right at issue in the present case is the right of the petitioner, once properly convicted and sentenced to a term of incarceration, to petition for a writ of habeas corpus as a means of challenging the fairness of his conviction and, therefore, the very legal-ity of it. Habeas corpus proceedings are civil proceed-ings; *Collins* v. *York*, 159 Conn. 150, 153, 267 A.2d 668 (1970); not criminal prosecutions. See *Summerville* v. *Warden*, 229 Conn. 397, 422–24, 641 A.2d 1356 (1994) ("It is undoubtedly true that [a] person when first charged with a crime is entitled to a presumption of innocence, and may insist that his guilt be established beyond a reasonable doubt. . . . The presumption of innocence, however, does not outlast the judgment of conviction at trial. Once a defendant has been afforded a fair trial and convicted of the offense for which he

was charged, the presumption of innocence disappears. . . . Any other conclusion would be inconsistent with the fact that our habeas corpus jurisprudence places a heavy burden on the petitioner to establish that, notwithstanding his conviction, he is entitled to a new trial." [Citations omitted; internal quotation marks omitted.]). Yet, "[a]lthough habeas corpus proceedings are civil in nature, they are unique in that they involve the petitioner's liberty and the amount of time the petitioner will be incarcerated." *Zollo* v. *Commissioner of Correction*, 133 Conn. App. 266, 293, 35 A.3d 337 (*Lavery, J.*, concurring in part and dissenting in part), cert. granted on other grounds, 304 Conn. 910, 39 A.3d 1120 (2012) (appeal dismissed May 1, 2013).

Accordingly, we view the right to petition for a writ of habeas corpus, as a means of challenging the legality of a conviction, as being no less constitutionally significant than the right of a defendant to bring a direct appeal, as a means of challenging a judgment of conviction. "Generally, ineffective assistance of counsel claims are not properly raised in a direct appeal, but, rather, by a petition for a new trial or a writ of habeas corpus, which provide an opportunity for the trial court to conduct an evidentiary hearing related to the claim of ineffective assistance. See, e.g., *State* v. *Leecan*, 198 Conn. 517, 541, 504 A.2d 480 ('a claim of ineffective assistance of counsel is more properly pursued on a petition for new trial or on a petition for a writ of habeas corpus rather than on direct appeal' . . .), cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986)." *State* v. *Stocking*, 131 Conn. App. 81, 87, 26 A.3d 117, cert. denied, 302 Conn. 940, 28 A.3d 993 (2011). Because the petitioner did not have a trial, his only means of raising a claim of ineffective assistance of counsel is by means of a petition for a writ of habeas corpus.

It is well recognized that a valid waiver of the right to appeal from a criminal conviction must be supported by a showing that a defendant knowingly, voluntarily,

and intelligently waived such right. "Since a decision to waive one's statutory right to appeal cannot be said to be knowingly, voluntarily and intelligently made if based upon a misapprehension as to the effect of this action . . . prior to the acceptance of an agreement to waive an appeal pursuant to a plea bargaining arrangement, care should be taken to inform the accused of the appellate rights to which he is entitled and to the consequences of this decision. . . . Before a defendant can be held to have waived his right to appeal a separate conviction, the record, therefore, must affirmatively disclose that the defendant was apprised of the possible merits of an appeal." (Citation omitted; internal quotation marks omitted.) *Molinas* v. *Commissioner of Correction*, 231 Conn. 514, 523–24, 652 A.2d 481 (1994); see also *Tyson* v. *Warden*, 24 Conn. App. 729, 733, 591 A.2d 817 (to demonstrate that petitioner deliberately bypassed exercise of his right to direct appeal "the record before us must disclose some reasonable basis for concluding that a convicted person has intelligently, understandingly and voluntarily waived his statutory right to appeal" [internal quotation marks omitted]), cert. denied, 220 Conn. 909, 597 A.2d 340 (1991); *Smith* v. *Robinson*, 8 Conn. App. 459, 461, 513 A.2d 187 (1986) ("Connecticut stands with [t]he numerical majority of courts which have considered the question [whether a criminal defendant may waive the right to appeal in exchange for a favorable sentence or sentences and which] hold that, if knowing and voluntary, a waiver of appeal by the defendant in a criminal case is valid" [internal quotation marks omitted]). Similarly, in light of the magnitude of the right at issue in the present case, we will not merely presume a waiver of it on the basis of a silent record, but will give effect to a waiver only after ensuring that it has been clearly expressed on the record, and that it is knowing, intelligent, and voluntary.

We carefully have reviewed all of the evidence presented to the court. Among the relevant evidence, Gravalec-Pannone testified in part that he did not have any doubt that, at the proceeding on May 4, 1998, the petitioner withdrew his prior petition with prejudice and that his handwritten notes concerning the proceeding that day reflected the same. Further, Gravalec-Pannone testified that, at the hearing on May 4, 1998, the court questioned the petitioner concerning his decision to proceed with Hutchinson's representation, after having moved for replacement counsel, as well as the "the consequences of the withdrawal of the petition." At the hearing concerning the present petition, the following colloquy between the petitioner's attorney and Gravalec-Pannone concerning the withdrawal of the prior petition occurred:

"Q. But do you recall Judge Radcliffe questioning [the petitioner] about why he wanted to withdraw the petition?

"A. I recall him asking did he understand that by withdrawing the petition he was not going to have his trial there; that [his trial counsel] was there, the state was ready to proceed; that withdrawing it with prejudice means . . . did he understand what that all meant. I remember him asking that series of questions to [the petitioner]; that it wasn't a question of the matter being continued because no one was available. Everybody was there ready to go.

"Q. And do you recall [the petitioner] objecting in any way to not having a trial?

"A. No."

During the petitioner's testimony before the court in the present case, he recalled that, on May 4, 1998, Judge Radcliffe asked him whether he wanted to withdraw his prior petition and that, following Hutchinson's lead,

he nodded in agreement. He was unable to recall whether Judge Radcliffe informed him that the withdrawal was "with prejudice" or about the significance of that term. Additionally, he testified that he did not learn the significance of a withdrawal with prejudice until after the hearing. The petitioner testified that he did not actually want to withdraw the petition at the hearing before Judge Radcliffe.

As the court observed in its memorandum of decision, the respondent did not introduce a transcript of the proceedings before Judge Radcliffe on May 4, 1998. The court file related to the prior petition was not before the court. Likewise, Hutchinson was not called as a witness in the present proceeding. The respondent's exhibit F, a copy of the withdrawal form filed on May 4, 1998, does not indicate that a withdrawal with prejudice occurred. Boxes on the judicial branch withdrawal form, signed by the petitioner and Hutchinson, are checked to indicate that the dispute had been resolved by the discussion of the parties and merely that "THE PLAINTIFF'S ACTION IS WITHDRAWN AS TO ALL DEFENDANTS WITHOUT COSTS TO ANY PARTY."

It is not in dispute that the petitioner withdrew his prior petition. Neither party asserted that the court imposed any sanction on the petitioner that precluded him from bringing any related petitions thereafter. Based on our review of the relevant evidence, the record does not support a finding that the petitioner knowingly, voluntarily and intelligently waived his right to bring any habeas petition related to the ineffective assistance of his trial counsel.[2] Specifically, to prove a waiver of the petitioner's right to assert his claim in a subsequent habeas petition, the respondent would have had to have

---

[2] In so holding, we see no need to foreclose the possibility that, prior to trial, a petitioner may withdraw a habeas petition *with prejudice*, perhaps after having reached a mutually satisfactory agreement with the respondent.

made an affirmative showing that, at the time of the withdrawal, the petitioner was apprised of and understood the right being waived and the consequences of his waiver. Such a showing has not been made.

The respondent, as the party moving for a dismissal of the present petition, has failed to make a showing that a valid, enforceable waiver of the petitioner's right to petition for a writ of habeas corpus occurred in connection with the prior petition. For these reasons, we disagree with and reverse the habeas court's judgment of dismissal.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.